**Pansy SELLARS, Plaintiff,**

v.

**SECRETARY OF DEPARTMENT OF HEALTH, EDUCATION & WELFARE, Defendant.**

**No. S70 C 32.**

United States District Court,
E. D. Missouri,
Southeastern Division.

Sept. 9, 1971.

---

William H. Bruce, Jr., Ellington, Mo., John W. Reid, II (Co-Counsel), Fredericktown, Mo., for plaintiff.

Daniel Bartlett, Jr., U. S. Atty., James M. Gordon, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

REGAN, District Judge.

In this proceeding to review a final decision of the Secretary of Health, Education, and Welfare, both parties have moved for summary judgment.

On January 6, 1969, plaintiff filed her application to establish a period of disability as provided in Section 416(i), 42 U.S.C. and to obtain disability insurance benefits as provided in Section 423. Plaintiff last met the earnings requirement for insured status (20 quarters of coverage in the 40-quarter period ending with the first quarter of disability) on September 30, 1967. In her application, plaintiff alleged that she became disabled on June 15, 1965, at the age of 45, by reason of "scirrhous carcinoma, mastectomy," that is, surgical removal of a breast due to a hard malignant tumor. The issue for determination, which after a hearing, was decided adversely to plaintiff by the Social Security Administration, was whether plaintiff sustained her burden of establishing that she was disabled within the meaning of the So-

cial Security Act at any time on or before September 30, 1967.

Plaintiff left school at the age of 15 for the purpose of marriage. In 1961 she married her fourth husband, a farmer, with whom she lives in a 6-room farmhouse on a 71 acre tract. A stepdaughter now 15, also lives in the house. Many years ago plaintiff worked for a button company in Henderson, Kentucky, cutting buttons from shells. Her first "steady" job was with Olin-Mathieson, an ammunition manufacturer in East Alton, Illinois. After working for that company on four different occasions prior to 1950, she then was employed by it on a regular basis from 1950 to 1962 as an inspector, and on occasions during such employment she was "loaned out" to the production department of her employer. Plaintiff was last employed on June 5, 1962, quitting her job at that time for the purpose of taking care of her stepdaughter who was then a small girl.

During the period of her employment, plaintiff underwent five operations, the first in 1952 or 1953 for the removal of a cyst from her right wrist, the next in 1957 for the removal of bunions from both feet, the third in 1958 for the removal of her left kneecap, which had been broken when she was 19 years of age, and the fourth and fifth in 1960 and 1961 for the removal of cysts from her ovaries and the removal of tubes.

Although plaintiff testified that she was "run down" in 1962, she was not then under a doctor's care and her health was admittedly not a factor in her decision to quit her job. In 1965, plaintiff complained of "not feeling well" and was examined by Dr. Earl P. Semon. Dr. Semon discovered a lump in her right breast and referred her to Dr. Ragsdale, at whose instance surgical procedures for the removal of the breast and surrounding tissues were performed on June 17, 1965 by Dr. A. F. Havesky (who died some nine months after the operation). A biopsy on the left breast later that year indicated no malignancy. Plaintiff testified that after the breast surgery she was "all torn up" emotionally and physically, but "got better"— "sort of got a hold on" herself later. In May, 1969, plaintiff had one further operation, that for the purpose of removing a ganglion cyst from her right wrist.

Plaintiff testified that she still sees Dr. Semon and takes nerve and pain pills. She has developed fluid in her right arm with the result that the arm swells and is painful when the fluid builds up. The doctors recommend that she wear an elastic bandage on the arm. As to this, plaintiff testified that she has not followed the physicians' advice because "I can't stand anything tight on me, it numbs my hand until I have a fit." However, there is nothing in plaintiff's testimony or in the medical evidence to indicate that this problem was reported to or even discussed with any doctor. Plaintiff also complained at the hearing of pain in both her shoulders as well as abdomen pains which occur when she is extremely tense as a result of "real anxiety." With the use of a hearing aid in her glasses, plaintiff is able to hear normally.

So far as appears from the medical evidence of record, plaintiff's breast operation was successful and there has been no recurrence of cancer following surgery. She has had routine periodic six month checkups. On February 5, 1968 and again on August 10, 1968, plaintiff was examined by Dr. Ernst M. Tapp, an internist. On a routine six-month follow-up examination on January 31, 1969, by Dr. Tapp and his associate Dr. John Tatum, apparently for use in connection with plaintiff's application for disability benefits, the physicians diagnosed her as "tense, apprehensive and emotionally unstable," and fearful that she will never get well, with post-operative residuals of the right breast. The doctors noted mild to moderate edema of the right arm due to lymphasis. In his report, Dr. Tapp reported plaintiff as stating that if she had to live with the fluid in her arm she would rather be dead. Dr. Tapp prescribed no medication, and

there is nothing in her February 29, 1967 report to the Social Security Administration which indicates that plaintiff was then and theretofore disabled from gainful employment.

The only other pertinent medical evidence in the record is a report of Dr. Augustin V. Paredes, a surgeon to whom plaintiff was sent by Dr. Semon for examination. As of December 15, 1969, the date of Dr. Paredes' examination, he found plaintiff had "moderate to advanced residual lymphedema of entire (right) upper extremity associated to weakness & about 20% limitation of motion." The report also noted "partial ankylosis of [plaintiff's] left knee (with) about 30% limitation of motion in flexion" and "progressive weakness of grip (with) obvious deformity of both wrists." Dr. Paredes concluded that plaintiff is "totally incapacitated & fully and permanently disabled." However, wholly apart from its conclusionary nature and its absence of specifics, the difficulty with this opinion is that it speaks as of December 15, 1969, the date of the examination and gives no indication as to whether (and why) he believes plaintiff was similarly disabled on or before September 30, 1967. Among the factors taken into account by Dr. Paredes are the conditions of both wrists, yet it was not until May, 1969, that plaintiff's left wrist was operated upon. Nor is the record clear that plaintiff's difficulty in her left leg was as much of a problem on September 30, 1967, as it may have been in December, 1969.

The Hearing Examiner carefully and fairly summarized and evaluated all of the evidence, including the lay witnesses, and took note of all of plaintiff's complaints and physical problems. He found that the preponderance of the evidence failed to establish the existence of any impairment, or combinations of impairments, of such severity to exclude plaintiff from engaging in gainful activity at her customary occupation for a continuous period of 12 months at any time on or before September 30, 1967, when she last met the earnings require-ment. Accordingly, he found that plaintiff was not entitled to a period of disability or disability insurance benefits for which she filed her January, 1969 application. This decision stands as the final decision of the Secretary of Health, Education and Welfare.

■■ Plaintiff had the burden of establishing her claimed disablity. Easttam v. Secretary of Health, Education and Welfare, 8 Cir., 364 F.2d 509, 511. A condition which becomes disabling after a claimant last meets the special earnings requirement cannot be the basis for a finding of disability. That plaintiff may have become disabled within the meaning of the Act subsequently to September 30, 1967 does not entitle her to disability benefits, her right being dependent upon her condition as of the last day of her insured status.

■■ It is well settled that the findings of the Secretary and the reasonable inferences drawn therefrom are conclusive on the courts if they are supported by substantial evidence on the record as a whole. Brasher v. Celebrezze, 8 Cir., 340 F.2d 413, 414. Even though we might have reached an opposite conclusion, were the matter before us de novo, we are nevertheless precluded from doing so. Vineyard v. Gardner, 8 Cir., 376 F.2d 1012, 1014. Our view of the record discloses that there is substantial evidence upon which the Secretary could reasonably find that plaintiff had not sustained her burden of establishing she was disabled as of September 30, 1967. We are, therefore, bound by the findings of the Secretary and the reasonable inferences he has drawn.

In view of our conclusion that the finding of the Secretary is supported by substantial evidence on the whole record, it follows that defendant's motion for summary judgment should be and it is hereby sustained and plaintiff's cross-motion for summary judgment should be and it is overruled. The Clerk is directed to enter judgment affirming the final decision of the Secretary of Health, Education, and Welfare and dismissing plaintiff's petition for review.